(117 So. 774)

No. 27568.

## C. G. ROBINSON & CO. v. CONNELL.

June 4, 1928. Rehearing Denied July 2, 1928.

Taylor, Porter, Loret & Brooks, of Baton Rouge, for appellant.

Cross & Moyse, of Baton Rouge, for appellee.

ST. PAUL, J. When the Standard Box Company went into the hands of defendant as receiver, the United States government had preferred against it a claim for some $8,000 additional corporation income taxes, which amount had been placed in escrow to respond for said claim, which the company disputed.

On March 1, 1922, plaintiffs wrote defendant as follows:

"This will confirm agreement made between you and our Mr. J. K. Hopkins with reference to the audit of the Standard Box Factory, said audit to cover the following work:

"Detailed audit for the years 1920 and 1921.

"Review of federal income and excess profit tax returns for the years 1917, 1918, 1919, 1920, and 1921.

"Compilation of any amended tax return which may be necessary.

"Analysis of the fixed asset account, beginning January 1, 1917.

"For the above work we are to receive per diem rates of $30 and expenses for senior accountants and $15 and expenses for assistants."

Under which agreement plaintiffs completed the work therein designated about September 30, 1920, for which they were ultimately paid $4,838.62. And as a result thereof an amended tax return was compiled and filed with the government negativing and wiping out the government's original claim for $8,000, and claiming a refund from the government of $33,000 as having been paid in excess of what was due.

## I.

The government sent down its own expert, and as a result of the latter's examination the government not only denied the claim for a refund of $33,000, but also put forth an additional claim for some $12,000 additional taxes (in lieu of the original $8,000 claimed), to wit, on March 16, 1923.

This was placed in the hands of plaintiffs for attention, with the result that, after considerable study and preparation and after five trips to Washington (including two upon this matter alone), plaintiffs succeeded in not only having the claim for $12,000 abandoned by the government and the $8,000 in escrow released, but also in getting from the government a check for the full amount of the claim advanced by the defendant as the result of the audit made by plaintiffs, to wit, a check for $33,000.

## II.

The trial judge properly excluded parol evidence to show that the services rendered by plaintiffs after the receipt of the government's letter of March 16, 1923, were included in those to be rendered under the agreement of March 1, 1922. That agreement is free from all ambiguity; and where an instrument which purports to set forth the mutual obligations of the parties is signed by one party and accepted and acted upon by the other it is to be regarded as a written contract between them, not to be varied by parol evidence. 13 Corp. Jur. 304, § 127.

## III.

The trial judge thought, and so do we, that the additional services rendered by plaintiffs after March 16, 1923, were not included in those contemplated by the agreement of March 1, 1922, and were of a nature entirely different from and superior thereto. The services to be rendered under the agreement of March 1, 1922, were purely clerical in character; those to be rendered under the employment of March 16, 1923, were not at all clerical in character, but rather in the nature of expert services and requiring a degree of skill and familiarity with the income tax laws, in no way connected with or necessary to the work of an accountant. And plaintiffs are entitled to receive for such services whatever they may be worth, but not on a basis of mere per diem compensation for accounting work.

## IV.

Plaintiffs claim $5,000 for this additional work, and the trial judge allowed it. We think the services were worth that sum. The amount involved was at least $45,000 (to wit, $33,000 plus $12,000), and the result of the services rendered by plaintiffs was that defendant profited thereby, and received in actual cash, at least $41,000 (to wit, refund check for $33,000 and $8,000 released from

escrow). The amount allowed is only slightly in excess of 10 per cent. of the amount involved, and the evidence shows that a fee ranging from 10 to 20 per cent. of the amount involved is a fair fee in such cases.

Decree.

The judgment appealed from is therefore affirmed.